HERROD & THIGPEN *v.* CLEMENT DAVIS, Guardian, etc.

1. SLAVERY AND EMANCIPATION.—It has not yet been adjudicated by the courts of this state at what precise time slavery was abolished.

2. CONFEDERATE MONEY.—*Semble:* That it is the duty of the courts of this state, before any action upon a contract for the payment of money, which was executed after May 1, 1862, and before May 1, 1865, to give effect to the act entitled "An act to alter the rules of evidence in certain cases," by regarding the amount mentioned as *prima facie* intending Confederate Treasury notes.

Error to the circuit court of Hinds county.   WATTS, J.

*C. E. Hooker*, for appellant.

The plea of general issue was filed, and notice of the proof to be offered, also a special plea setting up a failure of consideration; to this plea a demurrer was filed, which was sustained by the court below.   This action of the court is the first error assigned by appellant.   This special plea was responsive to the demand sued on, and was clearly proper to enable appellants to avail themselves of their legitimate defense.

2. The court erred in refusing to allow appellants to amend their pleadings after sustaining the demurrer to their first

special plea.  It is insisted that, under our pleading act, this was a grave error, as it prevented a fair investigation of the circumstances of the contract sought to be enforced.  Rev. Code, art. 180–182.  Under the general issue and notice accompanying it, appellants had a clear right to show failure of consideration.  Murrell v. Legrand, 1 How. Rep., 150; Ferguson v. Oliver, 8 S. & M., 337.  Also, Matlock v. Livingston, 9 S. & M., 484; Buckley v. Cunningham, 6 S. & M., 364.

3. The third error assigned is, that the court permitted the note to be read to the jury without being stamped according to law.

4. The fourth error assigned is, the refusal of the court to allow appellants to prove the contract of hiring made with the slave, Jake, after his emancipation; for by notice given, the plaintiff had full knowledge that this defense would be set, such notice being intended under one statute to serve the purpose of a special plea.

5. The fifth error is, that the court granted the 1st and 4th instructions asked by the plaintiff below, and in refusing to give the 1st, 2d, and 3d instructions asked for by appellees, and in giving, instead, his own.  The 1st instruction for plaintiff below was, that the only issue before the jury was that raised by the plea of *non assumpsit*—that the matters arising under the special plea and the notice filed therewith, were not at all to be considered by the jury.  The notice given appertained to the plea of *non assumpsit*, and had nothing to do with the special plea, which set up specially itself those facts, intended to be proved under the general issue and notice.  The act of 1866–67, session acts, p. 373, provided that all instruments sued on of this character, bearing date between the 1st of May, 1862, and the 1st day of May, 1865, should be *prima facie*, regarded as Confederate transactions, unless there was something on the face of the paper itself, to show that the parties intended otherwise.

6. The sixth ground of error assigned embraces the refusal to give the 4th, 5th, 6th, and 7th instructions asked by

defendants in the court below. But the refusal to give the 7th is more particularly insisted as error. It is that "the plaintiff must prove that they had the legal title to the instrument sued on, to the satisfaction of the jury, or they cannot recover in this action." 1 Chitty's Pleadings, 527; Anderson et al., v. Patrick, 7 S. & M., 354; 2 How. Miss. Rep., 648; Lake v. Hastings, 24th Miss., 490; 10 S. & M., 586; 11 S. & M., 452; 13 S. & M., 43.

*John Shelton,* for appellee.

The science of the special pleading under the common law, as it exists in this state, is really substantially the same, with a few unimportant exceptions, relating mostly to matters of mere form, as it was before the passage of the anomalous pleading act of 1850. Hart v. Southern R. R. Co., 40 Miss., 391.

Appellants filed two pleas, the general issue, and a special plea in bar, setting up certain matters of defense, which the court decided, upon demurrer, to be insufficient. There was the ordinary notice accompanying the general issue, of certain matters to be offered in evidence under that plea, but these matters being substantially the same as those embraced in the special plea, and the court having determined they were insufficient as a bar, declined to allow the appellants to introduce proof of them on the trial. Jamison v. McDaniel et al., 25 Miss., 83; Harmon et al., v. Flemming, same, 135, and cases there cited.

The order of the court sustaining the demurrer, does not appear in the record, but there is no reason to doubt that it also gave leave to plead over, as required by the statute. Rev. Code, 495, art. 110.

2d. The second error assigned is the refusal of the court to allow appellants to amend their pleading of the first trial, and the granting of a rehearing. The suit was brought 23d March, 1866. On the 9th May, thereafter, they filed their two pleas, *non assumpsit,* and a plea in bar. This plea was disposed of under the demurrer, and the first trial had at November term, 1866, and a new trial granted. It was then the application to file new pleas was made, and refused.

Practically, the defendant has the whole of the first term to plead in, but the statute, Rev. Code, 503, art. 150, requires certain things to be done during the first term. Demurrers must be decided, and issues of fact made up, ready for trial at the next term, so that the plaintiff may know what defense he must prepare to meet. Defective pleas may be amended and perfected, but no new and independent pleas can be filed at the second or any future term. Calhoun et al., v. Grimes, admr., 25 Miss., 47. This decision was made under the imparlance act of 1840, but its provisions on this subject, are precisely the same as those contained in the Code of 1857, on this subject.

3d. The third error assigned is, that the court allowed the note sued on to be read to the jury, the same being un- stamped. It is true, the note was without stamps, but we insist that none were necessary to its validity as a matter of evidence. The note bears date 3d January, 1865, *in flagrante belli*, as the public history of the country tells us; at a time when the laws of the United States had no practical opera- tion in Hinds county, where the note was made. There were no collection districts, no revenue officers, having in charge matters of taxes, stamps, etc. The act of Congress of 30th June, 1864, section 46, covers this case. It provides " that if, from any cause, at any time after said law went into oper- ation, the same could not be executed in any state or part thereof, it should be the president's duty, so soon as the authority of the United States shall be re-established, to pro- ceed to execute the provisions of said act, etc. This duty the president performed by his order of 2d June, 1865, and the commissioner of internal revenue has decided that instru- ments made in insurrectionary districts prior to the issuance of such order, were not subject to stamp duties.

4th. The fourth assignment of error is the refusal of the court to permit testimony to be given to the jury, offered by appellants, of a certain contract of hiring of the boy Jake, from himself, about the middle of August, 1865; the value of Confederate money, and that it was a Confederate money

transaction, etc. If the court, as we insist, committed no error in either sustaining the demurrer to the plea in bar, or in refusing leave to file the three new pleas offered on the 20th November, 1866, then, manifestly, this fourth assignment of error cannot be sustained.

5th. The fifth error assigned states to the giving of certain instructions asked for by plaintiff in the court below, and the refusal to give, as asked, those requested by defendants. The court charged the jury that the only issue before them was that joined on the plea of *non assumpsit*, and that the matters arising under the second plea and the notice, were not at all before them or to be considered by them. As the pleadings stood, we insist that the court was perfectly correct in this instruction. The fourth instruction was: "that although the note was made in view of Confederate money, as insisted by defendants, yet in the absence of proof of its value, the jury should find the full amount." No evidence of Confederate money being before the jury, the instruction was unquestionably correct.

It is true the note was made between the dates fixed in the second section of the act of 19th February, 1867, 373–74. As a matter of evidence merely, it may be said that it was made in view of Confederate money. But the act did not change nor undertake to change the law of pleading, and the inference from the date of the note, as matter of evidence, was not admissable before the jury, unless some issue in the case fairly presented the question, nor did this inference tend to prove the value of Confederate money at any particular time.

The first, second, and third instructions asked by the appellants, relate to the point raised in the plaintiff's fourth instruction. The court was asked in different forms to say to the jury that the inference arising from the date of the note, was *prima facie* conclusive upon them, but the court modified each of them by adding that, " although these instructions laid down the abstract rule of law correctly, yet, as no plea had been filed, or notice given, setting up this defense,

they could not regard the instructions in the case before them. The court is not bound to charge the plainest principles of law, unless they are not only pertinent to the issue, but are relevant to, or grow out of the evidence in the case. Lewis v. Blake, 27 Miss., 435–36.

6th. The refusal of the court to give the fourth, fifth, sixth, and seventh instructions requested by defendants below, is next assigned as error. The supposed·eighth instruction is not in the record, and cannot be noticed. The others we will consider together, and in view of the state of the pleadings at the time of the second trial. The only plea was *non assumpsit*, with a notice that the negro had become free in May, 1865, and that defendant, Herrod, in order to retain him, had to hire him from himself as a freedman, etc. Under this state of the pleadings, and in the absence of all proof, the fourth instruction asks the court to charge the jury that if there was no evidence of title to the boy, Jake, in the plaintiff individually or as guardian, he had no right to recover. The fifth charges the jury that if the boy left the possession of the defendants without their fault, they were only bound for hire down to the time of his leaving. The sixth charges the jury that if the negro boy, Jake, after the *surrender*, remained with the defendant, Herrod, by virtue of a new contract, defendants were only bound for his hire to the time of the surrender.

The seventh charges the jury that plaintiff must prove this legal title to the instrument sued on, or he cannot recover. On general principles, all or most of these instructions were clearly wrong. On the state of the pleadings in the case, and the proof before the jury, not one of them could have been given without violating long and well established rules of pleading and evidence. It is deemed unnecessary to further pursue the investigation of this case.

TARBELL, J.:

This suit was brought upon a note, of which the following is a copy:

"$250. On or before the first day of January next, we, or

either of us, promise to pay Clement Davis, guardian of John M. Davis, a minor, the sum of two hundred and fifty dollars, for hire of negro boy named Jake, for the year 1865. January 3d, 1865.

[Signed.]                                    A. J. HERROD,
                                             J. J. THIGPEN.

The defendants pleaded the general issue, and specially, failure of consideration, for the reason that said note was given for the hire of a negro boy called Jake, for the year 1865; that said negro boy became free by virtue of the surrender of the Confederate forces in May, 1865, and long before that time by virtue of the proclamation of the president; that defendants were compelled to hire said boy from himself, and, in fact, did so hire him in order to retain his services, etc.

The defendants also gave notice to show under the general issue that said slave became free by virtue of the proclamation of the president; that he was in the act of leaving the defendant when, in order to retain the boy in his employment, he entered into a contract with him, agreeing to pay him for his work during the remainder of the year, etc.; and that defendant did not retain the services of the boy by virtue of contract with plaintiff, but by virtue of a contract with himself, etc.

To the special plea there was a demurrer, which was sustained by the court.

A trial resulted in a verdict for plaintiff under the rulings of the court, for the full amount of the note and interest. A motion for a new trial was sustained, and the defendant tendered further pleas setting out more fully the facts and circumstances of the defense, which were refused by the court, and not allowed to be filed.

Upon the trial the defendant objected to the note as evidence, for the reason that it was not " stamped " as required by the revenue laws of the United States, which objection was overruled, and the note read to the jury. The defendant offered to prove the facts set out in his pleas and notice,

also the value of Confederate money in January, 1865; to which plaintiff objected, and the objection was sustained by the court.

The court instructed the jury in substance for the plaintiff that the only issue before them was that joined on the plea of *non assumpsit*, and that the matters arising under the special plea and notice, were not all before them, or to be considered by them.

Several instructions were asked by defendant:

1st. That the note, from its date, was *prima facie* payable in Confederate money—it not appearing to the contrary on its face—were refused by the judge, and in lieu thereof, of his own accord, instructed the jury that this objection could only be taken by special plea or notice.

2d. That if there was no title to the slave, in plaintiff—that he left the hire of the defendants without their fault—that if the boy remained in the employment of defendant after May, 1865, not by virtue of the contract with plaintiff, but in pursuance of a separate contract of hire with the boy, then the defendants are liable only for hire up to the date of the new contract, was also refused.

Whereupon the jury found for the plaintiff the amount of the note and interest, with costs, etc.

The record states a litigation, simple, and easy of solution, in the light of the last two or three years, involved by the pleadings and rulings, in almost interminable intricacies, which it were idle to attempt to solve in detail, as the cause, for reasons to be stated, will have to be remanded, when the counsel and the courts will find no difficulty in adjusting the questions arising according to present knowledge, though at the date of this trial they were involved in some doubt.

The effect of the emancipation proclamation sought to be introduced by counsel, we think, does not necessarily arise. Should this question, however, come up in this, or any other cause, when fully and properly presented by counsel, this court will examine it with all the impartiality and deliberation which its gravity suggests.

The boy was hired by plaintiff to defendants, for the year 1865. Whether white or black, bond or free, he proceeded, under the contract, to work for defendants. A free white man might then have done, and might to day, do the same. To the extent of his service he was of benefit to defendants, under the contract, as would be a free white man, who might, at any time, consent to enter the service of another under a similar arrangement. This court, therefore, will not pass upon this question as to what particular time he became free, whether from the date of the emancipation proclamation, or at the surrender, though it is presumable from the record, that he was a slave, and was so hired by plaintiff to defendants, and that the dispersion of the Confederate forces, and the presence of the Federal troops, caused the refusal of this boy longer to serve defendants, under the contract made for him by the plaintiffs. If the war had its hardships and its losses, so also, it had its benefits. The revolution has touched every member of society, and every branch of business. The matter at bar is one in which the results of the war, it would seem, ought equally to effect both parties; and in justice, that the measure of recovery should be the period of service under the contract. Such, from the record, would appear to be the correct rule in this instance, at least. The situation is peculiar and extraordinary. Courts and legislators have alike avoided a direct adjudication and determination of the problem to which the war has given rise, not necessary to the case before them. The constitutional convention of 1865, in prohibiting involuntary servitude in this state, premised the prohibition with the declaration that slavery had long before then ceased to exist. Precisely when, therefore, the slaves became free, is undetermined, as are many of the problems growing out of the changes of the last few years.

We are not disposed to undertake to solve these queries, until directly called upon, and then only when counsel shall first have exhausted the subject. We shall, therefore, leave the grave questions indirectly and imperfectly referred to in

this case, unexamined, sending the case back upon a single point, viz : that of the law of February 19, 1867, chap. 282, laws of 1867, p. 373.

This law was in force when this suit was tried, and its provisions should have been applied to the claim sued on.

Whatever difficulties of pleading occurred, should have been determined by the court, with a view to bringing the merits of the controversy between the parties, fairly to trial, under art. 180, p. 508, of the Code. The power there conferred, should be liberally construed, and liberally employed in all cases, for the purposes of justice.

Without passing upon each particular point raised, the general result of the rulings was not what it should have been, with the ample powers and duties of the court in directing the making up of the issue.

This case must, at all events, be sent back for a new trial, because the law of 1867 was disregarded, and because the court, if the pleadings were defective, failed so to direct the issue that its terms might be applied, and justice otherwise done, between the parties.

With the aid of discussions, adjudications, and laws, since the trial of the cause, there will be no difficulty in disposing of it on legal and correct principles.

*Judgment Reversed, and cause Remanded.*